UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOARD OF TRUSTEES OF THE CEMENT MASONS HEALTH AND WELFARE TRUST FUND FOR NORTHERN CALIFORNIA, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>EAGLE ROCK INDUSTRIES,<br><br>    Defendant. | Case No. 3:22-cv-03666-WHO<br><br>**ORDER ON MOTION FOR DEFAULT JUDGMENT**<br><br>Re: Dkt. No. 14 |

The Boards of Trustees of the Cement Masons Health and Welfare Trust Fund for Northern California, Cement Masons Vacation-Holiday Trust Fund for Northern California, Cement Masons Pension Trust Fund for Northern California, and Cement Masons Training Trust Fund for Northern California (collectively, the "Trust Funds") filed this motion for default judgment, seeking to collect unpaid and delinquent contributions, interest thereon, liquidated damages, and attorney fees and costs. Defendant Eagle Rock Industries ("Eagle Rock") has been served but has not appeared in this case or opposed this motion.

Under Civil Local Rule 7-1(b), I find this matter appropriate for resolution without oral argument and so VACATE the hearing scheduled for April 19, 2023. Because the plaintiffs meet the standard for default judgment, their motion is GRANTED in part. Their request for liquidated damages on late-paid contributions is denied without prejudice and as detailed below, the plaintiffs may file a supplemental brief within two weeks if they would like to collect these damages.

**BACKGROUND**

The Trust Funds are multi-employer benefit plans as defined by the Employee Retirement

Income Security Act of 1974 ("ERISA") § 3, 29 U.S.C. §§ 1002(3), (37). Complaint ("Compl.") [Dkt. No. 1] ¶ 3. They were created by collective bargaining agreements ("CBAs") between the Associated General Contractors of California, Inc. and the District Council of Plasterers and Cement Masons of Northern California ("Cement Masons Union"), as well as by written trust agreements under § 302 of the Labor Management Relations Act of 1974 ("LMRA"), 29 U.S.C. § 186. *Id.* ¶¶ 5, 9; Declaration of Karen Hubbard ("Hubbard Decl.") [Dkt. No. 14], Ex. E. The Boards of Trustees are the administrators and fiduciaries of the Trust Funds and are authorized to seek judicial relief on behalf of the Trust Funds. Compl. ¶ 3; *see also* Hubbard Decl., Exs. A, B.

The Trust Funds consist of all employee fringe benefit contributions made by employers and provided to covered employees pursuant to the CBAs, as well as all returns on contributions and other property. Hubbard Decl. ¶¶ 10, 12, Exs. A, B. The trust agreements for each fund contain identical terms and conditions. *Id.* ¶ 11.

The Boards of Trustees are authorized to ensure that signatory employers comply with the terms and conditions of the trust agreements and make timely contributions, and to set rules and regulations as necessary for the administration of the Trust Funds. *Id.* ¶¶ 12, 15, Ex. C at 4[1] (Article IV § 4(P)).

Eagle Rock is an employer within the meaning of ERISA §§ 3(5), 515, and an employer in an industry affecting commerce within the meaning of LMRA § 301. Compl. ¶ 7. In 2017, Eagle Rock, by virtue of its membership with United Contractors, became bound by the Master Labor Agreement ("Master Agreement") between Associated General Contractors of California, Inc. and the Cement Masons Union, and so agreed to be bound to the provisions and conditions of the trust agreements. *Id.* ¶ 9; *see also* Hubbard Decl. ¶ 6, Ex. D. The Master Agreement has never been terminated. *Id.* ¶ 11. Collectively, the Master Agreement and the trust agreements are referred to as the "Agreements."

Relevant here, § 8A-E of the Master Agreement requires covered employers to contribute

---

[1] Page numbers in citations to exhibits refer to the blue docket page number found at the top of each page.

2

to the Trust Funds based on the hours worked by their respective employees. *Id.* ¶ 10; Hubbard Decl., Ex. E. Contributions are due on the 25th day of the month following the month in which hours were worked and are considered delinquent if not received by that day.[2] Compl. ¶ 10; Hubbard Decl. ¶ 14, Ex. B at 3 (Article II § 10), Ex. F. The Agreements require employers to pay liquidated damages and interest on delinquent contributions. Hubbard Decl. ¶ 14. The interest and liquidated damages rates are outlined in the "Liquidated Damages Program—Board Policy" ("Board Policy") and are set at $150 per delinquent contribution for payments made within 30 days of the due date with an addition one and a half percent interest per month until paid. *Id.*, Ex. F.[3] The Agreements also require Eagle Rock to pay for reasonable costs and attorney fees related to the collection of delinquent contributions. Hubbard Decl. ¶ 12, Ex. C at 3 (Article IV § 3).

On June 22, 2022, the Boards of Trustees filed the complaint, alleging that Eagle Rock failed to pay contributions for hours worked by its employees in August and September 2018, and that Eagle Rock's contributions were late in September 2019 through December 2019, January 2020, February 2020, August 2020 through October 2020, and January 2021 through March 2021. Compl. ¶ 13. The Boards of Trustees seek to recover unpaid contributions as well as interest and liquidated damages on unpaid and late contributions. *Id.*

The complaint and summons were served on Eagle Rock's agent on August 2, 2022. Proof of Service [Dkt. No. 11].

On December 7, 2022, the Boards of Trustees moved for entry of default, which was entered on December 9, 2022. [Dkt. Nos. 12, 13].

On January 20, 2023, the Boards of Trustees filed the Motion for Default Judgment,

---

[2] The complaint states that payments are due on the 15th day of the month, while the motion and Hubbard Declaration refer to the 25th day. *Compare* Compl. ¶ 10 *with* Mot. 9:17; Hubbard Decl. ¶ 14.

[3] The Boards of Trustees enacted the Board Policy on July 1, 2014, pursuant to their authority under the Trust Agreements to "[e]nter into contracts or policies in its own name or in the name of the Fund; terminate, modify or renew any contracts or policies . . .; and exercise and claim all rights and benefits granted to the Board or the Fund." Hubbard Decl. ¶ 15, Ex. C (article IV, § 4(H) of the Trust Agreement). By virtue of its agreement to be bound by the Trust agreement through its membership with United Contractors, Eagle Rock also agreed to be bound by the Board Policy. Hubbard Decl. ¶ 15.

3

seeking $32,061.20 in unpaid contributions and interest and liquidated damages thereon as well as $3,221.39 in liquidated damages and interest for the late-paid contributions and $4,032.70 in attorney fees and costs. ("Mot.") [Dkt. No. 14]. Eagle Rock has not filed an opposition.

## LEGAL STANDARD

"Federal Rule of Civil Procedure 55(b)(2) permits a court to enter a final judgment in a case following a defendant's default." *Bds. of Trs. of Sheet Metal Workers Pension Tr. of N. Cal. v. CER Mech. Corp.*, No. 20-cv-03462-WHO, 2021 WL 1338556, at *2 (N.D. Cal. Apr. 9, 2021) (citation omitted). If the court has subject matter jurisdiction and personal jurisdiction, and the defendant was adequately served, then "[w]hether to enter a judgment lies within the court's discretion." *Id.* (citation omitted). Courts look to the *Eitel* factors to determine whether to grant default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decision on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986) (citation omitted).

Upon entry of default, all factual allegations within the complaint are accepted as true, except those allegations relating to the amount of damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). Where a default judgment is granted, the scope of relief "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. Proc. 54(c).

## DISCUSSION

### I.     JURISDICTION

Before entering default judgment, a court has "an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

I have subject matter jurisdiction pursuant to 29 U.S.C. § 185, which grants labor union organizations power to sue employers in federal court, and 29 U.S.C. § 1132, which empowers

4

ERISA plan fiduciaries to bring civil actions to enforce plan terms, as well as supplementary jurisdiction pursuant to 28 U.S.C. § 1367(a). Personal jurisdiction also exists under ERISA § 3(5) because Eagle Rock is a California corporation and California employer, with its principal place of business in Walnut Creek, California. Compl. ¶ 7. Additionally, the Trust Funds are administered in the Northern District of California. *Id.* ¶ 2.

## II.   SERVICE OF PROCESS

Federal Rule of Civil Procedure 4(e)(1) allows for service following state law for serving a summons in the state where the district court is located. California law provides that a corporation may be served by delivering a copy of the summons and complaint to a person designated as an agent for service of process or to a secretary, assistant secretary, or a person authorized to receive service of process. Cal. Code Civ. Proc. § 416.10(a)-(b); *see also* Cal. Corp. Code § 1502(b) (procedures for designating agent for purposes of service of process).

On August 2, 2022, Eagle Rock's authorized agent for service of process was served with the summons and complaint. [Dkt. No. 11]. Accordingly, service was proper.

## III.  *EITEL* FACTORS

### A.   Possibility of Prejudice to Plaintiffs

The first *Eitel* factor considers whether plaintiffs will suffer prejudice if the motion is denied. *Eitel*, 782 F.2d at 1471. If relief is not granted, given Eagle Rock's failure to appear or otherwise defend this action, the Boards of Trustees "would be unable to recover the plan contributions or otherwise enforce the Bargaining Agreement" against Eagle Rock. *CER Mech.*, 2021 WL 1338556, at *4. This potential prejudice to the Boards of Trustees weighs in favor of default judgment.

### B.   Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint

Under the second and third *Eitel* factor, I consider the merits and sufficiency of the plaintiffs' claims. *Eitel*, 782 F.2d at 1471. Courts often analyze these two factors together and are required to "consider whether a plaintiff has stated a claim on which it may recover." *CER Mech.*, 2021 WL 1338556, at *4. I accept as true all well-pled allegations regarding liability. *See Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).

The plaintiffs assert claims under ERISA § 515, which requires signatory employers to make contributions in accordance with the terms and conditions of collective bargaining agreements. *See Trustees of Screen Actors Guild-Producers Pension & Health Plans v. NYCA, Inc.*, 572 F.3d 771, 774 (9th Cir. 2009); *see also* 29 U.S.C. § 1145. To succeed on a claim, plaintiffs must show that "(i) the trusts are multiemployer plans as defined by 29 U.S.C. § 1002(37); (ii) the collective bargaining agreement obligated Defendant to make contributions; and (iii) Defendant did not make the required contributions." *Bd. of Trs. ex rel. Laborers Health & Welfare Tr. Fund for N. Cal. v. Geminis Demolition & Constr., Inc.*, No. 22-CV-01438-JSC, 2022 WL 2304286 at *3 (N.D. Cal. June 27, 2022) (citation omitted).

The Boards of Trustees sufficiently allege that the Trust Funds are multi-employer benefit plans, Compl. ¶ 5, and that Eagle Rock was obligated to make contributions to the plans pursuant to the Agreements by virtue of its membership with United Contractors, *id.* ¶¶ 9-10. They also allege that Eagle Rock failed to make contributions in August 2018 and September 2018 and failed to pay required contributions on time for multiple months between 2019 and 2021. *Id.* ¶ 13. Pursuant to the terms of the CBA, the Agreements, and 29 U.S.C. § 1132(g)(2), Eagle Rock is liable for unpaid contributions, liquidated damages and interest thereon, liquidated damages and interest for late contributions, and reasonable attorney fees and costs. Taking the allegations as true, and as supported by evidence, plaintiffs have made a strong showing of likelihood of success on the merits and these factors weigh in favor or granting default judgment.

### C.     The Sum of Money at Stake in the Action

Under the fourth *Eitel* factor, I consider "the amount of money at stake in relation to the seriousness of Defendant's conduct." *Geminis Demolition*, 2022 WL 2304286, at *3 (citation omitted); *see also Eitel*, 782 F.2d at 1471. "[W]hen the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate." *Geminis Demolition*, 2022 WL 2304286, at *3 (citation omitted).

Here, the Boards of Trustees seek (i) interest and liquidated damages totaling $3,221.39 for late-paid contributions; (ii) unpaid contributions of $12,582.68; (iii) $19,478.52 in interest and liquidated damages for unpaid contributions; and (iv) attorney fees and costs in the amount of

6

1     $3,032.29, for a total of $39,315.29.  Mot. 17:1-9.

2         As discussed below, the Boards of Trustees demonstrate with supporting evidence that they are entitled to most of these amounts.  The amount is appropriate and reasonable as authorized under 29 U.S.C. § 1132, as well as the Agreements.  This amount is also in line with other ERISA cases in which default judgment was granted.  *See, e.g.*, *CER Mech.*, 2021 WL 1338556, at *8 (awarding $33,612.97 in damages and $11,939.69 in attorney fees and costs); *see also Bay Area Ctys. Roofing Indus. Promotion Fund v. Bartek Int'l, Inc.*, No. 21-CV-06025-BLF, 2022 WL 1062047, at *5 (N.D. Cal. Apr. 8, 2022) (awarding $113,578.15 in damages and $8,310.93 in attorney fees and costs).  Thus, this factor weighs in favor of default judgment.

### D. The Possibility of a Factual Dispute

The fifth *Eitel* factor considers the possibility that material facts are disputed.  *Eitel*, 782 F.2d at 1471-72.  Once default is entered, the defendant is "deemed to have admitted all well-pleaded factual allegations" in the complaint.  *CER Mech.*, 2021 WL 1338556, at *5 (quoting *DirectTv, Inc. v. Hoa Huynh*, 503 F.3d 847, 851 (9th Cir. 2007)).  Here, the plaintiffs properly served Eagle Rock, and Eagle Rock was given fair opportunity to respond and to participate in the proceedings.  *See id.*  Additionally, the plaintiffs submitted the Agreements for review, and Eagle Rock's obligations under those are clear, so "the possibility for any factual disputes is unlikely."  *Id.* (citation omitted).  Accordingly, this *Eitel* factor also weighs in favor of default judgment.

### E. Excusable Neglect

The sixth *Eitel* factor considers whether a defendant's default may have resulted from excusable neglect.  *Eitel*, 782 F.2d at 1472.  "When a defendant is properly served with a summons and complaint and thus had notice[] of the lawsuit, an entry of default judgment is favored."  *Bd. of Trs. of Cement Masons Health & Welfare Tr. Fund for N. Cal. v. PDB Servs. LLC*, No. 21-CV-03383-DMR, 2022 WL 2289062, at *7 (N.D. Cal. Feb. 22, 2022), *report and recommendation adopted*, No. 21-CV-03383-JD, 2022 WL 2288917 (N.D. Cal. Apr. 15, 2022).  As discussed above, Eagle Rock was properly served with a copy of the summons and complaint and has failed to respond to any motions or to appear at the hearing on this mooring.  There is no indication that Eagle Rock's default was due to excusable neglect.  This factor favors default

United States District Court
Northern District of California

judgment.

### F. Policy Favoring Decision on the Merits

The final *Eitel* factor instructs that cases should be decided on the merits whenever reasonably possible. *See Eitel*, 782 F.2d at 1472. However, "this preference, standing alone, is not dispositive." *CER Mech.*, 2021 WL 1338556, at *5 (citation omitted); *see also* Fed. R. Civ. Proc. 55(b) (providing that the "termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action."). Here, a decision on the merits would not otherwise be possible because Eagle Rock has not answered the complaint, appeared in court, or otherwise participated in the proceedings. *See CER Mech.*, 2021 WL 1338556, at *5. Therefore, this factor favors granting default judgment.

In sum, the *Eitel* factors weigh in favor of default judgment.

## IV. RELIEF SOUGHT

Once liability is established through a defendant's default, a plaintiff is required to establish that the requested relief is appropriate. *CER Mech.*, 2021 WL 1338556, at *5 (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

### A. Unpaid Contributions

In an action to recover unpaid contributions, the court shall award unpaid contributions, interest, and liquidated damages. 29 U.S.C. § 1132(g)(2)(A-C). "For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26." *Id.* § 1132(g). Liquidated damages are equal to the interest on the unpaid contributions or the contract liquidated damages rate, whichever is greater. *Id.* § 1132(g)(2)(C).

#### 1. Principal

First, the Boards of Trustees provide supporting evidence that Eagle Rock failed to pay its self-reported contributions to the Trust Funds for the months of August 2018 and September 2018, in the total amount of $12,582.68. *See* Compl. ¶ 13; Hubbard Decl., Exs. J, K. The outstanding

contributions for hours worked in August 2018 amount to $3,329.52.[4]  The outstanding contributions for hours worked in September 2018 amount to $9,253.16.[5]  Accordingly, plaintiffs are entitled to recover the total principal for unpaid contributions of $12,582.68.

### 2. Interest and Liquidated Damages[6]

Plaintiffs further assert that Eagle Rock owes $9,739.26 in interest through December 15, 2022, and the equivalent amount, $9,739.26 in statutory liquidated damages on the unpaid contributions pursuant to 29 U.S.C. § 1132(g)(2)(C).  *See, e.g.*, *CER Mech.*, 2021 WL 1338556, at *5 (awarding interest and liquidated damages on unpaid contributions).  Because plaintiffs' calculations have some errors, I do not rely on their calculations of interest and liquidated damages.[7]

The plaintiffs have demonstrated with supporting evidence that the outstanding contributions for hours worked in August 2018 total $3,329.52.  This contribution became delinquent on September 25, 2018, and remained outstanding as of December 15, 2022,[8] a period of 51 months.[9]  Hubbard Decl. ¶¶ 18, 20.  At one and a half percent simple interest per month, the monthly rate is $49.94, totaling $2,546.94 for the 51-month period.[10]  Similarly, the outstanding

---

[4] The plaintiffs state this total is $3,329.46, which may be due to a rounding error.  Mot. 12:5.

[5] Plaintiffs correctly note that Eagle Rock's calculations in their Employer's Report of Contribution was off by $0.02.  Mot. 12 n.1.

[6] In the complaint, the Boards of Trustees state "[i]nterest will continue to accrue at the rate of 1.5% each month during the pendency of this lawsuit."  Compl. ¶ 14.  Plaintiffs seeking interest through judgment typically provide a daily rate to assist in calculating the interest.  *See CER Mech. Corp.*, 2021 WL 1338556, at *5. The Boards of Trustees provide only interest calculations through December 15, 2022, and do not address the calculation of interest from December 2022 through judgment.  Accordingly, I will not grant interest through judgment, but Boards of Trustees are not precluded from seeking such interest after judgment is entered.

[7] All calculations are rounded to the nearest cent.  Values greater than or equal to one-half cent are rounded up.

[8] Plaintiffs provided calculations as of December 15, 2022.  *See* Hubbard Decl., Ex. L.

[9] The Liquidated Damages and Interest Board Policy states that if payment is not received within 30 days of the due date, interest will be charged at one and a half percent per month.  Because the payment was due on September 25, 2018, the first month of interest was calculated between September 25 and October 25, 2018.

[10] The plaintiffs calculated this as $2,531.90.  *See* Hubbard Decl., Ex. L.

9

contributions for hours worked in September 2018 totaled $9,253.16, became delinquent on October 25, 2018, and remained outstanding as of December 25, 2022—a 50-month period. *Id.* ¶¶ 18, 21. At one and a half percent simple interest per month, the monthly rate for the September contributions is $138.80. Over the 50-month period, this gives rise to interest of $6,940.00.[11] Accordingly, based on the evidence, the Boards of Trustees are entitled to $9,486.94 in interest.

Plaintiffs also seek statutory liquidated damages under 29 U.S.C. § 1132(g)(2)(C) which provides that plaintiffs may recover liquidated damages at an amount equal to the interest on the unpaid contributions or the contract liquidated damages rate, whichever is greater. Section 1132(g)(2) is "mandatory" when three requirements are met: "(1) the fiduciary obtains a judgment in favor of the plan, (2) unpaid contributions exist at the time of suit, and (3) the plan provides for liquidated damages." *CER Mech.*, 2021 WL 1338556, at *5 (first quoting *Idaho Plumbers & Pipefitters Health and Welfare Fund v. United Mech. Contractors, Inc.*, 875 F.2d 212, 215 (9th Cir. 1989); and then quoting *Nw. Adm'rs, Inc. v. Albertson's, Inc.*, 104 F.3d 253, 257 (9th Cir. 1996)).

Each requirement is met. This Order grants judgment in favor of the plan, unpaid contributions exist at the time of this suit, and the plaintiffs submitted a copy of the plan that shows it provides for liquidated damages. *See* Hubbard Decl., Ex. B at 3 (Article II § 10); *id.*, Ex. F. Accordingly, the plaintiffs are entitled to the interest they seek under § 1132(g)(2)(C)(i), in the amount of $9,486.

Together, plaintiffs are entitled to $31,556.56 in unpaid contributions, interest, and liquidated damages.

### B. Late Contributions

Plaintiffs also seek $3,221.39[12] in interest and liquidated damages for contributions that Eagle Rock paid late. Mot. 10:28.

"ERISA does not expressly provide for a statutory recovery of liquidated damages for late

---

[11] The plaintiffs calculated this as $7,207.37. *See* Hubbard Decl., Ex. L.
[12] The complaint seeks "$3,225.99, according to proof at trial." Compl. ¶ 13.

payments of employer contributions." *PDB Servs.*, 2022 WL 2289062, at *7 (citing *Idaho Plumbers*, 875 F.2d at 215-16). However, liquidated damages on contributions paid before the lawsuit was filed are permitted under contract law where the trust agreement provides for liquidated damages. *Id.* A liquidated damages provision is enforceable where: (1) "the harm caused by a breach [is] very difficult or impossible to estimate," and (2) "the amount fixed [is] a reasonable forecast of just compensation for the harm caused." *Idaho Plumbers*, 875 F.2d at 217.

With respect to the first factor, "[w]here, as here, 'an employer is delinquent in paying contributions into a fringe benefit trust fund, the fund suffers some kinds of harms that are very difficult to gauge.'" *CER Mech.*, 2021 WL 1338556, at *6 (first quoting *Bd. of Trs. v. Udovch*, 771 F. Supp. 1044, 1048 (N.D. Cal. 1991); and then citing *Trs. of Bricklayers Local No. 3 Pension Tr. v. Huddleston*, 2013 WL 2181532, at *6 (N.D. Cal. May 20, 2013)). The parties here agreed in the Trust Agreements that "it would be extremely difficult, if not impracticable, to fix the actual expense and damage to the Fund and to the Pension Plan which would result from the failure of an Individual Employer to pay the monthly Contributions in full within the time prescribed." Hubbard Decl., Ex. B at 3 (Article II § 10). This makes sense: it would be difficult or impossible to estimate the harm to plaintiffs given the uncertainty of costs related to the collection and administration of delinquent payments. Thus, the first *Idaho Plumbers* factor is satisfied. *See, e.g.*, *PDB Servs.*, 2022 WL 2289062, at *7 (concluding that the first *Idaho Plumbers* factor was met "because of the uncertainty in increased costs to Plaintiffs for collection and administration of the Trust Funds").

For the second factor, "[t]o determine whether the parties reasonably forecasted the compensation for breach, courts look to the parties' intentions and a good faith effort to determine the amount of damages." *CER Mech.*, 2021 WL 1338556, at *6 (citation omitted); *see also Huddleston*, 2013 WL 2181532, at *6 (noting that the question is "whether the record supports the inference that the parties 'made a good faith effort to establish a liquidated damages rate that would be a reasonable forecast of just compensation' when entering into the CBA." (citation omitted)).

The Trust Agreements, originally entered into in 1959, *see* Hubbard Decl., Ex. A, provide

11

that delinquent contributions incur liquidated damages in the amount of "$20 per delinquency or 15% of the amount of the Contributions due, whichever is greater," *id.* Ex. B at 3 (Article II § 10). The Trust Agreements explicitly state the liquidated damages provision was not enacted as a penalty. *Id.* The current version of the Master Agreement, enacted in January 2016, provides for liquidated damages at flat fee of $150 per month "to reflect the internal administrative costs incurred by the trust administrators in monitoring and tracking such late contributions." *Id.*, Ex. E at 25 (§ 8(G)(2)); *see also id.* ¶ 15, Ex. F (showing the Board Policy on Liquidated Damages set liquidated damages at $150 for each delinquent contribution).

By agreeing to be bound by the Master Agreement and Trust Agreements in 2017, *see* Compl. ¶ 9, Eagle Rock agreed to pay interest and liquidated damages in the amount of $150 per delinquent contribution. *See* Hubbard Decl., Ex. F. Other courts in this district have concluded that a $150 fee for liquidated damages is reasonable. *See PDB Servs.*, 2022 WL 2289062, at *7; *see also Bd. of Trustees of Laborers Health & Welfare Tr. Fund for N. Cal. v. JS Taylor Constr., Inc.*, No. 19-CV-06011-SK, 2020 WL 3441052, at *6 (N.D. Cal. May 26, 2020) (collecting cases), *report and recommendation adopted*, No. 19-CV-06011-MMC, 2020 WL 3432641 (N.D. Cal. June 23, 2020). Eagle Rock also agreed that "it would be extremely difficult, if not impracticable, to fix the actual expense and damage" resulting from late contributions. Hubbard Decl., Ex. B at 3 (Article II § 10). Together, this shows the requisite good faith effort, *see Huddleston*, 2013 WL 2181532, at *6, and shows the amount is reasonably tailored to the damage they would anticipate, *see CER Mech.*, 2021 WL 1338556, at *6. Accordingly, the liquidated damages provision satisfies both factors from *Idaho Plumbers* and is enforceable. *See, e.g.*, *PDB Servs.*, 2022 WL 2289062, at *7 (concluding that the same liquidated damages provision and the same collective bargaining agreement at issue here satisfied both *Idaho Plumbers* factors).

However, the plaintiffs do not provide sufficient evidence to support their calculations of liquidated damages and interest. The accounting of the interest and liquidated damages owed for each late payment does not include the amount of the delinquent payment or when it was ultimately received. *See* Hubbard Decl., Ex. H. The interest and fees assessed under the Liquidated Damages program are calculated based on how late the payments were, so without this

12

information it is impossible to determine how much is owed in interest and fees. Because the record is insufficient in this regard, the plaintiffs' request for liquidated damages and interest for the late contributions is DENIED without prejudice.

### C.     Mandatory Injunction Compelling and Audit of Eagle Rock

The plaintiffs also seek a mandatory injunction compelling Eagle Rock to submit to an audit for the period from January 2019 through the last completed quarter in order to determine the full amount of contributions owed by Eagle Rock, and to provide the auditor with certain documents.[13]  Compl. 8:27-9:10.

Article IV, § 7 of the Trust Agreements contractually obligates Eagle Rock to submit to an audit of financial records by the Boards of Trustees. Hubbard Decl. ¶ 12, Ex. C at 4 (Article IV § 7). An audit is "well within the authority of the trustees as outlines in the trust documents" and is part of "proper plan administration." *Bd. of Trs. of Laborers Health & Welfare Tr. Fund for N. Cal. v. Cazadores Constr., Inc.*, No. 17-cv-05242-WHO, 2018 WL 986020, at *5 (quoting *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 581 (1985)); *see also* 29 U.S.C. § 1132(g)(2)(E) (authorizing courts to award "such legal and equitable relief as the court deems appropriate"). And, the right of trustees of employee benefit plans to require such audits is well established. *See Cazadores Constr.*, 2018 WL 986020, at *5 (citing *Cent. Transp.*, 472 U.S. at 571 n.12).

Here, I deem the requested injunction proper, and so the plaintiffs' request for a mandatory injunction is GRANTED.

---

[13] The documents include:
> California Quarterly Report of Wages, Form DE-6; Federal Tax Forms W-3/W-2 and 1069/1099; Payroll Registers/Journals; Individual Earnings Records; Source Records, including time cards and time card summaries for all employees; contribution reports for all trust funds; workers' compensation reports; certified payroll reports; personnel records indicating job classifications and hire/termination dates; cash disbursement journal; vendor invoices; copies of subcontract agreements; cash receipts journal; general ledger; job cost records; records of related entities; and any other books and records that may be necessary to complete the auditor's determination or provide additional explanation.

Compl. 9:5-10.

### D. Attorney Fees and Costs

Finally, plaintiffs seek an award of reasonable attorney fees and costs pursuant to 29 U.S.C. § 1132(g)(2)(D) and the Trust Agreements. Mot. 14:5-12; Compl. 8:24-26. A plaintiff who obtains a judgment for an ERISA claim under 29 U.S.C. § 1145 for unpaid contributions is entitled to "reasonable attorney's fees and costs of the action, to be paid by the defendant." 29 U.S.C. § 1132(g)(2)(D). Here the Trust Agreements also provide that employers must reimburse trustees for reasonable attorney fees, costs, and other expenses incurred in connection with the collection of delinquent contributions. *See* Hubbard Decl., Ex. C at 1 (Article IV § 3).

Courts in the Ninth Circuit typically rely on the "lodestar analysis" to calculate fee awards, which is "is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate." *PDB Servs.*, 2022 WL 2289062, at *8 (citation omitted).

Plaintiffs' counsel Ronald Richman requests attorney fees in the amount of $3,445.00, representing 10.6 hours of work he billed between December 6, 2022, and January 4, 2023. Declaration of Ronald Richman ("Richman Decl.") ¶ 5 [Dkt. No. 14]. Richman has practiced law since 1984 and has handled ERISA trust fund litigation since 1995. *Id.* ¶ 3. Richman says his standard hourly billing rate is $375 to $450, but that he charges plaintiffs $325 per hour. *Id.* ¶ 4. Richman has also provided timesheets confirming the time spent and tasks performed. *Id.* ¶ 5, Ex. A. I find that these hours and rates are reasonable. *Cf. CER Mech.*, 2021 WL 1338556, at *7 (finding 55.4 hours over a two-year period reasonable).

Additionally, "courts have routinely awarded costs for service, messenger services, and investigatory fees in actions brought under 29 U.S.C. § 1132(g)(2)(D)." *Nichols Plumbing & Heating*, 2016 WL 8313928, at *9; *see also CER Mech.*, 2021 WL 1338556, at *8. The plaintiffs submit that they have incurred $587.70 in costs related to this action, including for the complaint filing fee and messenger service. Richman Decl. ¶ 6, Ex. A. These costs are reasonable and in line with other courts in this district. *See, e.g.*, *Nichols Plumbing & Heating*, 2016 WL 8313928, at *9 (finding $400 filing fee, $258.45 messenger service, and $1,035.00 investigative fees reasonable); *Pension Plan for Pension Tr. Fund for Operating Eng'rs v. J & K Sweeping*, No. C

14

14-1179 CW, 2014 WL 4626008, at *8 (N.D. Cal. Sept. 15, 2014) ("With respect to Plaintiffs' request for costs for messenger service, legal research, and investigation, such costs are available on the basis that they are generally billed as attorneys' fees.").

Accordingly, the plaintiffs and Richman are entitled to attorney fees in the amount of $3,445.00 and costs in the amount of $587.70, for a total of $4,032.70.

## CONCLUSION

Plaintiffs' motion for default judgment is GRANTED in part. Plaintiffs are entitled to $31,556.56 in unpaid contributions, interest, and liquidated damages, and $4,032.70 in attorney fees and costs, as well as the requested injunction. The plaintiffs' request for liquidated damages on late-paid contributions is denied without prejudice. The plaintiffs may submit a supplemental declaration for that request within two weeks of the date of filing of this Order.

**IT IS SO ORDERED.**

Dated: April 17, 2023

William H. Orrick
United States District Judge